IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02455-PAB

BRENDALEE JACKSON,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Brendalee Jackson's complaint [Docket No. 1], filed on September 19, 2011.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On January 22, 2009, plaintiff applied for disability benefits under Title II and Title XVI of the Act.  R. at 20.  Plaintiff alleged that she had been disabled since July 27, 2004.  *Id*.  After an initial administrative denial of her claim, plaintiff testified at a hearing before an Administrative Law Judge ("ALJ") on October 29, 2010.  R. at 20. The ALJ denied plaintiff's claims on December 3, 2010.  R. at 29.

_____

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

The ALJ found that plaintiff had the severe impairments of "right shoulder tendonitis status-post impingement repair surgery, and fibromyalgia."  R. at 22.  The ALJ found that these impairments did not meet one of the regulations' listed impairments, R. at 23-24, and ruled that plaintiff had the residual functional capacity ("RFC") to

> [P]erform sedentary work as defined in 20 C.F.R. § 404.1567(a).  The claimant should not be required to stoop, balance, crouch, crawl or kneel more than occasionally.  She should never be required to climb ladders, ropes and scaffold.  The claimant should not be required to work above shoulder level with the right dominant upper extremity, nor should she be required to push, pull or perform extended reaching with that extremity.  The claimant should not be required to handle or finger objects more than frequently.  She should not be required to work at unguarded heights or near unguarded hazardous mechanical equipment.

R. at 24.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is not disabled because, through her date last insured, she "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  R. at 29.  Plaintiff appealed and the Appeals Council declined to assume jurisdiction over this matter.  Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

3

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and (5)
> whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

4

### C.  Date Last Insured

Plaintiff argues that the ALJ erred in stating twice in his decision that her date last insured was March 31, 2010, as opposed to the correct date of June 30, 2010. Docket No. 11 at 22-23; *compare* R. at 20 *with* R. at 22, 29.  Plaintiff points out that there is significant medical evidence dating from April and May 2010.  Docket No. 11 at 22-23.  However, it is clear from the ALJ's decision that he considered this evidence. *See* R. at 23 (citing R. at 804-06 (April 2010 record from Drs. Helen Story and Robert Sims)) and R. at 27 (citing R. at 779-83 (May 2010 records from Dr. Jason Peragine), R. at 784-87 (May 2010 records from Dr. Jan Leo)).  At no point in his decision did the ALJ state that these records were generated after the date last insured, as he did with records from October 2010.  *See* R. at 27.  Thus, it appears that any misstatement of the date last insured was a typographical error and not a substantive failure to consider all the relevant evidence.

### D.  Non-Severe Impairments

Plaintiff argues that the ALJ erred in failing to find her ulnar neuropathy, migraine headaches, digestive problems, sleep disorder, anxiety, and depression to be severe impairments within the meaning of the Social Security regulations.  Docket No. 11 at 24. She further argues that, even if these impairments were properly deemed non-severe, the ALJ erred in failing to consider them in determining plaintiff's RFC.  *Id*.  Defendant counters that the ALJ's consideration of these impairments was sufficient.  Docket No. 12 at 12-15.

Plaintiff's medical records contain the following evidence of the additional alleged

impairments.  In April 2010, Dr. Robert Sims examined plaintiff and noted a possible

diagnosis of ulnar neuropathy: "I think she has a neuropathy.  She will have to have an

EMG to find out for sure.  Referred to physiatry."  R. at 806.

In February 2009, Dr. Story found that plaintiff suffered from "chronic migraine"

and "chronic pain syndrome" and prescribed topiramate to treat it.  R. at 582.

In June 2004, March 2006, April 2007, February 2008, July 2008, and December

2008, plaintiff complained to Dr. Story of digestive problems, including diarrhea,

difficulty swallowing, nausea, vomiting, gas, abdominal pain, and acid reflux.  R. at 588,

597-98, 630, 649, 669 and 740.  In March 2006, Dr. Story noted that plaintiff had a

normal esophagogram.  R. at 669.  In February 2008, plaintiff told Dr. Story that

esomeprazole had helped her digestive symptoms in the past and that she was

currently taking cimetidine, which was helping somewhat, but that she was still throwing

up several times per week.  R. at 627.

In February 2006, plaintiff went to the emergency room complaining of nausea,

vomiting, diarrhea, abdominal pain, and difficulty swallowing, among other medical

issues.  R. at 696.  She was admitted overnight and diagnosed with mild esophagitis.

R. at 682.  In May 2007, plaintiff went to the emergency room complaining of abdominal

pain, vomiting, and difficulty swallowing.  R. at 834.  She was diagnosed with epigastric

pain and "esophagitis/gastritis."  R. at 835.  In May 2010, plaintiff went to the

emergency room complaining of abdominal pain.  R. at 842.  The hospital record states

that plaintiff "has not had similar symptoms previously."  *Id*.  No cause for her pain was

determined.  R. at 845.

In June 2004, Dr. Story reviewed the results of plaintiff's sleep study and found

6

"[m]inimal [Obstructive Sleep Apnea] symptoms compared to previous, attributed to tonsillectoly [sic], palatoplasty, and weight loss."  R. at 740.  In September 2010, Dr. Story conducted a second sleep study and found that plaintiff did not exhibit symptoms of sleep apnea, but did suffer from "ongoing very severe and significant sleep fragmentation" of a kind "commonly seen in patients with fibromyalgia."  R. at 887-88.

In February 2006, when plaintiff was admitted to the emergency room with gastrointestinal complaints, she was found to have a "significant psychiatric history."  R. at 682.  In July 2005, Dr. Story noted plaintiff's complaint of anxiety attacks and recommended she be started on sertraline.  R. at 723.  In October 2010, Dr. Story noted that plaintiff was "tearful" because she was "tired, angry, and frustrated," but that she was not currently seeing anyone for depression and did not want to take an antidepressant because of the side effects.  R. at 874.

At her administrative hearing in October 2010, plaintiff testified that she was unable to use her hands repetitively, was experiencing migraines every few days, had to make frequent trips to the bathroom, had to take frequent naps during the day, experienced problems with memory and concentration, and experienced frequent anxiety attacks.  R. at 44-47, 52-58.  Plaintiff's attorney asked the VE whether a person with plaintiff's RFC, but with the added limitations of being unable to sit, stand, and walk for a combined eight hours per day, or the limitation of requiring frequent breaks, would be able to find work and the VE testified that the specified limitations would eliminate all available jobs.  R. at 70-71.

With respect to plaintiff's alleged ulnar neuropathy, the ALJ noted that she had not had an "EMG or nerve conduction testing to support a severe medically

7

determinable impairment affecting the upper extremities." R. at 23. With respect to her alleged migraine headaches, the ALJ found that plaintiff's complaints did not "appear to be so frequent or severe as to more than minimally affect [her] ability to work" and that she "had an essentially normal CT scan of the brain." *Id*. With respect to her alleged digestive problems, the ALJ found "no evidence that this complaint persisted after the alleged disability onset date" and that a "recent abnormal CT scan conducted in October 2010 revealed no significant findings indicative of an ongoing severe digestive impairment." *Id*. With respect to her alleged sleep disorder, he found that "a sleep study recently conducted in October 2010 was specifically found not indicative of obstructive sleep apnea and was instead considered suggestive of sleep fragmentation caused by fibromyalgia." *Id*. Finally, with respect to her alleged anxiety and depression, the ALJ found that "these complaints do not appear to cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id*.

In determining plaintiff's RFC, the ALJ discussed plaintiff's testimony regarding her chronic pain, dizziness, drowsiness, anxiety, depression, and panic attacks. R. at 25. He also reviewed the evidence regarding her symptoms of fibromyalgia in 2010, including back pain, numbness in her hands, and sleep fragmentation, stating:

> Given the absence of objective findings to support the claimant's continued neck and low back pain complaints, beginning early 2010 the evidence shows that fibromyalgia was suspected. The claimant's complaints of bilateral hand numbness in May 2010 were also thought likely related to fibromyalgia or a similar impairment, particularly as x-rays taken at that time of the hands and wrists were considered normal, and the claimant had full range of motion in these joints. As previously mentioned, a sleep study was later conducted in October 2010. Though no evidence of sleep apnea was indicated, the claimant was observed to have evidence of sleep fragmentation, again thought consistent with fibromyalgia.

R. at 27 (internal citations omitted).

Any error at step two in failing to find a particular impairment or combination of impairments severe is rendered harmless when an ALJ concludes that a claimant cannot be denied benefits at step two and proceeds to step three of the analysis. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). At steps three and four, an ALJ must consider "the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Plaintiff argues that the conditions listed above are severe impairments, that they caused the limitations she described at the hearing, and that these limitations should have been included in her RFC. Docket No. 11 at 26. She further argues that the VE's testimony indicates that, had the above limitations been included in her RFC, she would have been found disabled at step five. *Id*. Defendant counters that the ALJ did not err because he (1) stated that he considered all of plaintiff's symptoms; (2) specifically discussed symptoms of ulnar neuropathy, such as neck pain and the numbness in her hands; and (3) considered her drowsiness, anxiety, depression, and panic attacks. Docket No. 12 at 14 (citing R. at 23, 25).

Defendant is correct in noting that, in determining plaintiff's RFC, the ALJ discussed the impairments he found were not severe.  *See* R. at 25, 27.  Specifically, he discussed plaintiff's fibromyalgia, anxiety, depression, neck and back pain, sleep disturbance and drowsiness and found that the evidence of these impairments, taken together, did not support the claimed limitations on plaintiff's ability to perform work-related activities.  *See* R. at 25, 27.  Although the ALJ did not discuss plaintiff's gastrointestinal problems in assessing her RFC, he noted at step two the absence of objective evidence supporting this as a medically determinable impairment.  *See* R. at 23; *see also* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms.").

 In sum, the ALJ properly considered all of plaintiff's medically determinable impairments, in combination, in setting forth her RFC.

### E.  Treating Physician's Opinion

Plaintiff argues that the ALJ erred in discounting the opinion of her treating physician, Dr. Story.  Docket No. 11 at 27-30.  Defendant counters that the ALJ properly accorded Dr. Story's opinion less than controlling weight based on his finding that the opinion was inconsistent with other substantial evidence in the record and unsupported by objective medical findings.  Docket No. 12 at 15.

Dr. Story has been treating plaintiff since at least fall 2003 for a range of medical conditions, including neck pain, headaches, migraines, sleep apnea, and gastrointestinal problems.  R. at 765-67.  The administrative record contains Dr. Story's

treatment notes from fall 2003 through fall 2009.  R. at 572-772.

On April 9, 2009, Dr. Story completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on behalf of plaintiff.  R. at 789.  Dr. Story opined that plaintiff could not lift or carry ten pounds or more with her right arm; that she could sit for up to one hour at a time and up to five or six hours over the course of an eight-hour day, with frequent breaks; that she could stand and walk for up to thirty minutes at a time or for up to an hour over the course of an eight-hour day.  R. at 790.  She opined that plaintiff could not reach, push, or pull with her right hand.  R. at 791.  She opined that plaintiff could not climb ladders or scaffolds, stoop, kneel, crouch, or crawl, and could only occasionally climb stairs and ramps or balance.  *Id*.  She opined that plaintiff could not work at unprotected heights or sustain exposure to dust, odors, fumes, extreme cold, extreme heat, or vibrations; could frequently work with moving mechanical parts, operate a motor vehicle, or sustain exposure to humidity and wetness; and could only tolerate moderate noise.  R. at 792-93.  Dr. Story opined that these limitations would persist or had persisted for a period of twelve consecutive months.  R. at 794.

On April 22, 2009, Dr. Ashutosh Rangole examined plaintiff.  R. at 773.  Dr. Rangole documented plaintiff's chief complaint as "right shoulder pain."  *Id*.  His notes indicate that he reviewed three records: a December 8, 2004 record from an outpatient visit to Denver Vail Orthopedics; an October 6, 2004 record from an outpatient visit to Denver Vail Orthopedics, diagnosing plaintiff with impingement syndrome; and a July 2005 magnetic resonance image ("MRI") of plaintiff's right shoulder, indicating tendonosis in the tendon of her biceps.  *Id*.  Upon examining plaintiff, he found that

11

"[t]he claimant does not appear to be in any acute distress.  Movements in the room appear to be fluid.  Affect is appropriate today.  She does overplay some of the range of motion movements.  The pain appears to be way out of proportion to symptoms."  R. at 774.  He found that range of motion exercises caused plaintiff pain, but that she had full range of motion.  R. at 775.  In addition, he found that plaintiff was "diffusely tender over the right trapezius muscle" and that her upper back muscles were tense, but found no evidence of crepitus, synovitis, or joint thickening.  R. at 776.  He diagnosed plaintiff with right shoulder pain and found she would benefit from continuing to use the shoulder and restarting her physical therapy exercises.  *Id*.  He found that plaintiff did not have any functional limitations and concluded that she needed to "increase her activity level and to strengthen the shoulders by physical therapy exercises."  *Id*.

At the administrative hearing, plaintiff testified that her appointment with Dr. Rangole lasted "about ten minutes," during which time he looked at the scar on her arm from where she had stitches following her shoulder surgery.  R. at 61-62.  Plaintiff testified that she not recall Dr. Rangole performing any of the tests documented in his report, although she did not specify which "tests" she was referring to.  R. at 62; *see* R. at 774-76.

On June 2, 2009, state reviewing physician James McElhinney opined that plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday.  R. at 230.  He found no postural, manipulative, or environmental limitations.  R. at 231-33.  He found that Dr. Rangole's findings of full range of motion and normal strength, as well as plaintiff's reported daily activities,

rendered plaintiff's allegation of being able to lift no more than two pounds not credible. R. at 234.

On October 15, 2010, Dr. Story completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on behalf of plaintiff.  R. at 920.  Dr. Story opined that plaintiff could not lift or carry ten pounds or more with her left arm and noted a "new diagnosis of thumb pain," which required a specialist's evaluation before restrictions could be determined.  R. at 920.  She opined that plaintiff could sit, stand, or walk for fifteen minutes at a time; could sit for three hours over the course of an eight-hour day; and could stand or walk for one hour over the course of an eight-hour day.  R. at 921.  She opined that plaintiff could not reach, push, or pull with her right hand.  R. at 922.  She opined that surgery on plaintiff's right shoulder had left her with permanent restrictions and that the trigger thumb on her left hand "prevents fine grasp/manipulation or lifting."  *Id*.  She stated that her findings were supported by "[p]ermanent restrictions following work-related injury."  R. at 925.

The ALJ discussed the opinions of Drs. Story, Rangole, and McElhinney.  R. at 25-27.  He noted that medical records from 2005 showed right shoulder tendinitis and no further evidence of shoulder tearing or impingement.  R. at 26.  He noted that plaintiff's range of motion was improving as of July 2005.  R. at 26 (citing R. at 349).  He noted an assessment from March 2006 recommending that plaintiff discontinue formal therapy and work on improving her range of motion and shoulder strength by joining a health club.  R. at 26 (citing R. at 426).

With respect to Dr. Story's opinion, the ALJ noted that Dr. Story cited plaintiff's history of shoulder surgery, without noting recent findings to support the limitations she

13

found.  R. at 26-27.  He faulted Dr. Story for "fail[ing] to provide any explanation as to how this impairment precludes the claimant from any postural functioning and why it limits her ability to sit, stand and walk."  R. at 27.  He found that, "because Dr. Story's opinion conflicts with the better reasoned and better supported opinion of Dr. Rangole that same month, the April 2009 medical source statement of this treating source is rejected and given little weight in this matter."  *Id*.  The ALJ noted that Dr. Story's 2010 opinion concerned a period after plaintiff's date last insured and found that "Dr. Story failed to cite any substantiating objective support or reasoned explanation in support of these limitations."  *Id*.  He further found that "[a]vailable clinical treatment records from Dr. Story and others similarly fail to support the disabling exertional, manipulative, and postural restrictions found by this source."  *Id*.  In determining plaintiff's RFC, the ALJ adopted the restrictions that Dr. Story found in her 2009 opinion, except for the restrictions on lifting and carrying with her right hand and the postural restrictions on sitting, standing, and walking.  *Compare* R. at 24, 27 *with* R. at 789-94.

If the medical opinion of a treating practitioner is well supported by medically acceptable evidence and is not inconsistent with other substantial evidence in the record, an ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2).  In the event that the opinion of a treating physician does not merit controlling weight, an ALJ must take into account the following factors in determining how to evaluate the opinion: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations.  *Id*.  An ALJ may dismiss or discount an opinion from a medical source only if his decision to do so is "based on an

14

evaluation of all of the factors set out in the cited regulations" and if he provides "specific, legitimate reasons" for his rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

The ALJ specified the weight that he accorded Dr. Story's 2009 and 2010 opinions and provided reasons for his decision. Specifically, he found that Dr. Story's opinion was unsupported by her treatment notes and by other objective medical evidence, including x-ray and MRI results. *See* R. at 26-27. Nonetheless, the ALJ adopted the majority of the limitations that Dr. Story found in her 2009 medical source statement. *Compare* R. at 24, 27 *with* R. at 789-94. With respect to the limitations he rejected, he explained that the record lacked any explanation of the reason for finding such limitations. R. at 26-27 ("In support, Dr. Story simply cited the claimant's history of right shoulder surgery, without noting any recent clinical or radiographic findings to support almost a total inability to use the claimant's right upper extremity for work activity."); R. at 27 ("Available clinical treatment records from Dr. Story and others similarly fail to support the disabling exertional, manipulative and postural restrictions found by this source."). In addition, he found Dr. Rangole's opinion to be "better reasoned and better supported" and thus determined that it outweighed that of Dr. Story. *Id*. The ALJ's decision indicates that he considered a number of relevant factors, including consistency and supportability, in weighing Dr. Story's opinion. 20 C.F.R. § 416.927(c)(2).

15

In sum, the ALJ did not err with respect to the weight he accorded Dr. Story's opinion.

### F.  Number of Jobs Available in the National Economy

Plaintiff argues that the ALJ erred at step five of his analysis because he did not consider the number of jobs available in the regional economy and did not weigh the proper factors in determining that the number of jobs available nationally was significant.  Docket No. 11 at 30-33.  Defendant counters that the ALJ properly considered the jobs available in the national economy in arriving at his decision. Docket No. 12 at 22-24.

Under the Social Security regulations, an individual is deemed disabled only if her impairments prevent her from engaging in any kind of "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work."  42 U.S.C. § 423(d)(2)(A).  "[T]he relevant test is *either* jobs in the regional economy *or* jobs in the national economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 n. 2 (10th Cir. 2009) (emphasis in original). Accordingly, an ALJ may "look[] to the national economy–not just a local area" in determining whether there is a significant number of available jobs.  *Id*. at 1274.  Since the Tenth Circuit has not drawn a bright line above which the number of jobs is significant, an ALJ must consider certain factors in those instances where the number of jobs is not clearly significant.  *See id*. at 1274 n.2.  Those factors are: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance

claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (showing of 650 to 900 available jobs was not sufficient to show a significant number of jobs without evaluating enumerated factors) (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (stating that no reasonable factfinder could find that 152,000 jobs available nationally was an insignificant number); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) ("Here, the vocational expert testified that Long is capable of performing any of the approximately 650 jobs in the fields of surveillance monitoring, addressing, and document preparation that exist in Iowa, or one of the 30,000 such jobs that exists nationwide.  The ALJ found this to be a significant number, and we agree."); *Knudson v. Astrue*, 10-cv-02905-PAB, 2012 WL 1079130, at *10 (D. Colo. Mar. 30, 2012) ("the combination of 1194 positions available in Colorado with 79,900 positions available nationally is more than a significant amount of existing jobs that plaintiff is capable of performing");

The VE testified that a person with plaintiff's RFC could work as an information clerk or an addressing clerk and that, combined, there are 123,000 such positions nationally.  R. at 67.  The ALJ stated that, "[b]ased on the testimony of the vocational expert, . . . through the date last insured, . . . the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  R. at 29.

In light of the cases cited above, there is no basis for finding that the ALJ erred in

considering only the number of jobs available nationally or in concluding that this number is significant.  *See Trimiar*, 966 F.2d at 1330 ("The decision [of whether a significant number of jobs exists] should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation.").

### G.  Credibility

Plaintiff argues that the ALJ erred in discounting her credibility because the factors he cited do not support his conclusion.  Docket No. 11 at 33-35.  Defendant counters that the ALJ articulated sufficiently specific reasons to support his determination.  Docket No. 12 at 19-21.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Accordingly, the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo."  *Id*.

However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).  "[A]n ALJ cannot play

the role of doctor and interpret medical evidence." *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009) (internal citations omitted).  "When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements."  SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

Plaintiff objects to the ALJ's credibility determination because he cited two medical assessments that predated the onset of some of her impairments and because he stated that plaintiff's back pain began after she engaged in "heavy" lifting even though the record references only "lots of lifting."  Docket No. 11 at 33-35; *see also* R. at 26-27, 545.  Plaintiff is correct in noting that the ALJ discussed medical assessments from 2005 and 2006, prior to the development of plaintiff's lower back pain and fibromyalgia.  *See* R. at 26 (citing R. at 425-26, 436).  However, the ALJ discussed these records with respect to plaintiff's 2004 shoulder injury and not in relation to the impairments that arose later on.  The ALJ explicitly recognized how the cited records fit into the chronology of plaintiff's condition: "[s]ubsequent treatment records dated through the claimant's date last insured continue to mention some right shoulder pain but mostly note complaints of diffuse neck, back and upper extremity symptoms thought consistent with fibromyalgia.  Interestingly, the first mention of low back pain specifically was in July 2008 . . . ."  R. at 26 (internal citation omitted).  Thus, plaintiff's argument on this point is unavailing.

With respect to the ALJ's reference to "heavy lifting" as opposed to "lots of lifting," there is no evidence that the ALJ considered this evidence as a factor

19

undermining plaintiff's credibility or, if he did, that this minor misstatement was material to his decision.  *Compare* R. at 26 ("Interestingly, the first mention of low back pain specifically was in July 2008, with a reported onset of 2 days previously after the claimant had been doing a lot of 'heavy' lifting.") *with* R. at 545 ("Additional history sought from patient late in patient visit.  has [sic] been doing lots of lifting in the past week.").

The ALJ's decision indicates that he discounted plaintiff's subjective testimony of her impairments and limitations because the objective medical evidence did not support her account.  *See* R. at 27.  His credibility assessment was permissible and based on specific evidence in the record.  *See Lax*, 489 F.3d at 1084.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.

DATED February 24, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge